**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

MICHAEL S. HAZEN,

                                        Petitioner,

        - v -                                                    Civ. No. 9:05-CV-1262
                                                                          (NAM/RFT)

KENNETH S. PERLMAN, *Superintendent*,

                                        Respondent.

**APPEARANCES:**                                    **OF COUNSEL:**

MICHAEL S. HAZEN
Petitioner, *Pro Se*
01-B-2410
Washington Correction Facility
Box 180
72 Lock 11 Lane
Comstock, N.Y. 12821

HON. ANDREW M. CUOMO                          ALYSON J. GILL, ESQ.
Attorney General for the State of New York    Assistant Attorney General
Attorney for Respondent
120 Broadway
New York, N.Y. 10271

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

                    **REPORT-RECOMMENDATION and ORDER**

        Following a stabbing incident that occurred in May 2001, *pro se* Petitioner Michael Hazen

was charged with assault in the second degree.  In August 2001, while incarcerated on that charge,

Petitioner was involved in another altercation and was charged with another count of assault in the

second degree.  *People v. Hazen*, 764 N.Y.S.2d 289 (N.Y. App. Div., 3rd Dep't 2003).  On October

29, 2001, Petitioner pled guilty to assault in the second degree and attempted assault in the second

degree in satisfaction of both indictments, and, in accordance with that agreement, was sentenced to concurrent terms of seven years on the assault conviction and two to four years on the attempted assault conviction. *Id*.; Dkt. No. 1, Pet., Ex. A-2, Appellate Div. Mem. and Order, dated May 3, 2005.

On appeal of those convictions, the Appellate Division, Third Department, reversed the judgment, finding that Petitioner was not advised of a mandatory five year post-release supervisory period that was part of the plea bargain. *Id*. His plea bargain vacated, Petitioner went to trial on the May 2001 assault charge and was convicted of assault in the second degree and sentenced to seven years incarceration with a mandatory five year post-release supervision period. State Ct. R. on Appeal (hereinafter "R."), Trial Tr., dated Jan. 9, 12-14, 2004, at p. 315 & Sentencing Tr., dated Feb. 3, 2004, at p. 12. In a separate trial, Petitioner was acquitted on the second assault charge stemming from the August 2001 incident. Pet., Ex. A-2, Appellate Div. Mem. and Order, dated May 3, 2005.

Subsequent to his conviction, Petitioner filed a motion to set aside the verdict pursuant to N.Y. CRIM. PROC. LAW ("CPL") § 330 and two motions to vacate the judgment pursuant to CPL § 440. R., Exs. B, Pet'r § 330 Mot., dated Jan. 15, 2004; E, Pet'r First § 440 Mot., dated June 3, 2004 & J., Pet'r Second § 440 Mot., dated July 16, 2004. The trial court denied all three motions. R., Exs. D, County Ct. Decision and Order, dated Feb. 2, 2004; H, County Ct. Decision and Order, dated June 30, 2004 & M, County Ct. Decision and Order, dated Oct. 29, 2004. Because the record is unclear as to whether Petitioner sought leave to appeal any of the denials of those three motions, for the purposes of this Petition, we assume that he did.[1]

---

[1] The Respondent has indicated that he contacted the Appellate Division, Third Department, in an effort to ascertain whether Petitioner appealed the denials of his § 330 and two § 440 Motions. *See* Dkt. No. 12, Resp. Mem. of Law, at p. 6 n.3. The Appellate Division indicated Petitioner only appealed one of the County Court decisions, and faxed

(continued...)

Petitioner also filed a direct appeal to the New York State Supreme Court, Appellate Division, Third Department ("Appellate Division"), who affirmed the conviction, and his application seeking leave to appeal to the New York State Court of Appeals was denied. *People v. Hazen*, 799 N.Y.S.2d 596 (N.Y. App. Div., 3rd Dep't 2005); *People v. Hazen*, 836 N.E.2d 1158 (N.Y. 2005).

Hazen now brings this Petition for a Writ of *Habeas Corpus* pursuant to 28 U.S.C. § 2254 on the grounds that: (1) at trial, a member of the jury was unconstitutionally selected and impaneled; (2) his conviction was obtained by a violation of the privilege against self-incrimination; (3) the jury instructions were unconstitutional; and (4) the county court did not have jurisdiction to overturn both of his pleaded convictions after his successful appeal.

For the reasons that follow, it is recommended that the Petition be **denied.**

## I. DISCUSSION

### A. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (1996) ("AEDPA"), a federal court may not grant habeas relief to a state prisoner on a claim unless the state court adjudicated the merits of the claim and such adjudication either

> 1) resulted in a decision that was contrary to, or involved an unreasonable application, of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> 2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Hawkins v. Costello*, 460 F.3d 238 (2d Cir. 2006); *DeBerry v. Portuondo*, 403

---

[1](...continued)

to the Respondent an order, dated July 14, 2004, which states "permission to appeal . . . from order of Delaware County Court dated April 19, 2004 denied." *See* R., Ex. I, Order dated July 14, 2004. None of the denials of Petitioner's motions occurred on April 19, 2004. *See*, R., Exs. D, County Ct. Decision and Order, dated Feb. 2, 2004; H, County Ct. Decision and Order, dated June 30, 2004 & M, County Ct. Decision and Order, dated Oct. 29, 2004. Therefore, it is unclear which of the three denials was appealed and therefore exhausted. Although Respondent rationally assumes that the July 14, 2004 order applies to Petitioner's first § 440 Motion, which was denied on June 30, 2004, we need not make such an assumption in deciding this *pro se* Petition. Rather, we presume Petitioner appealed all three denials.

F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. Lefevre*, 246 F.3d 76, 88 (2d Cir. 2001).

The petitioner bears the burden of proving by a preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Jones v. Vacco,* 126 F.3d 408, 415 (2d Cir. 1997); *Rivera v. New York*, 2003 WL 22234679, at *3 (S.D.N.Y. Aug. 28, 2003). The AEDPA also requires that "a determination of a factual issue made by a State court shall be presumed to be correct [and t]he applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also DeBerry v. Portuondo*, 403 F.3d at 66; *Boyette v. LeFevre*, 246 F.3d at 88 (quoting § 2254(e)(1)) (internal quotations omitted).

The Second Circuit has provided additional guidance concerning application of this test, noting that:

> [u]nder AEDPA, we ask three questions to determine whether a federal court may grant habeas relief:  1) Was the principle of Supreme Court case law relied upon in the habeas petition "clearly established" when the state court ruled?  2) If so, was the state court's decision "contrary to" that established Supreme Court precedent?  3) If not, did the state court's decision constitute an "unreasonable application" of that principle?

*Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Williams and Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000)).

### B.  Failure to Exhaust

A state prisoner must normally exhaust available state judicial remedies before a federal court will entertain his petition for habeas corpus. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To satisfy the exhaustion requirement with respect to a claim, a defendant must "present the substance of the same federal constitutional claim[s]" to the state courts "that he now urges upon the federal courts[.]" *Aparicio v. Artuz*, 269 F.3d 78, 89 (2d Cir. 2001) (internal quotation marks

omitted) (citing *Turner v. Artuz*, 262 F.3d 118, 123-24 (2d Cir. 2001)).  "A federal constitutional claim has not been fairly presented to the State courts unless the petitioner has informed those courts of all the 'essential factual allegations' and 'essentially the same legal doctrine he asserts in his federal petition.'"  *Id.* (citing *Daye v. Attorney Gen. of the State of New York*, 696 F.2d 186, 191 (2d Cir. 1982) (further citing *Picard v. Connor*, 404 U.S. 270, 276-277 (1971)).

However, a claim may be "fairly present[ed] to the state courts[,] . . . without citing chapter and verse of the Constitution," if there is: (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, or (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.  *Daye v. Attorney Gen. of the State of New York*, 696 F.2d at 191; *see also Smith v. Duncan*, 411 F.3d 340, 348 (2d Cir. 2005).

In the case at bar, Petitioner's first claim, that a member of the jury was improperly impaneled, was not raised in state court in federal constitutional terms, however, in his Appellate Brief, Petitioner cited to a case that speaks of constitutional rights.  R., Ex. N, Pet'r Appellate Div. Br. at p. 24, citing *People v. Buford*, 506 N.E.2d 1901 (N.Y. 1987).  Furthermore, Petitioner raised all the same claims brought before the Appellate Division in his application seeking leave to appeal to the Court of Appeals.  R., Ex. Q, Pet'r Lt. Seeking Leave to Appeal, dated July 18, 2005.  Thus, we deem Petitioner's first claim to be exhausted as he relied on a state case with similar issues that employed a constitutional analysis.  *Daye v. Attorney Gen. of the State of New York*, 696 F.2d at 191.

Petitioner's second claim, that his right against self-incrimination was violated when the trial court precluded his pre-trial *omnibus* motions, which included a motion for suppression, was

presented in his Appellate Division Brief.  *See* Pet'r Appellate Div. Br. at pp. 28-30.  In addition, as Petitioner notes in his Traverse, Dkt. No. 13, this claim was presented as a constitutional violation, not just a state law violation.  *Id.* at pp. 29-30 (stating "[i]t is respectfully submitted that defendant's right to bring a suppression motion is based on his federal and state constitutional right against self-incrimination, which is a fundamental right[,]" and "the trial court erred . . . by denying the defense request for time to make pre-trial motions[.]")  Therefore, this claim was also fairly presented to the Appellate Division and the Court of Appeals and is therefore properly exhausted.

Petitioner's third claim, that the "jury instructions were unconstitutional because they did not tell the jury that the prosecution must prove all crucial elements of guilt beyond a reasonable doubt," was presented to the trial court in Petitioner's first § 440 Motion, albeit without much clarity.  In his first § 440 Motion, Petitioner included the following statements under his first cause of action: "Point 2: Jury instructions expressed the need for the People to prove beyond a reasonable doubt of every element of the crime;" and "Point 3: 'Dangerous Instrument' incorporates an added definition of 'Serious Physical Injury's' [sic] definition into the element of a 'Dangerous Instrument.'"  Pet'r First § 440 Mot. at ¶ 13.  Although these statements do not explain the precise grounds, constitutional or otherwise, for the alleged violation of his rights, it is clear that Petitioner intended to challenge the jury instructions.  The trial court acknowledged as much when it stated in its order dismissing the § 440 Motion that Petitioner placed an "objection to the jury instructions" in that Motion.  R., Ex. H, County Ct. Decision, dated June 30, 2004.  An objection to jury instructions calls to mind the right to a fair trial as secured by the Due Process Clause of the Fourteenth Amendment.  This claim is therefore also deemed to be exhausted. *Daye v. Attorney Gen. of the State of New York*, 696 F.2d at 191.

Petitioner's fourth claim, asserting "cruel and unusual punishment and no jurisdiction of [the] county court," was not fairly presented in state court and is therefore unexhausted.  In Petitioner's fourth claim, he states that the "County court did not have jurisdiction to overturn [Petitioner's] 2 to 4 conviction after appeal, as the appeal was only based on post release supervision, which by law only deals with determinate sentences, not indeterminate sentences."

In his Appellate Brief, Petitioner raised this issue as a procedural error on the part of the trial court, and, citing to one state court case, asserted that the trial court improperly vacated both of the judgments from Petitioner's original plea when it should have only vacated the judgment on the second assault charge that carried the mandatory five year post-release supervision period. Petitioner does not make reference to any constitutional issue or theme in his Appellate Brief, rather, he asserts that the trial court misunderstood or misinterpreted the Appellate Division's order to vacate the decision.  The case cited, *People v. Campbell*, 781 N.Y.S.2d 534 (N.Y. App. Div., 3rd Dep't 2004), is an opinion vacating a judgment based on a plea for failure to inform the defendant of a mandatory post-release supervision period but affirming another judgment against the same plaintiff because he did not challenge that second judgment.  In that case, the Appellate Division framed their decision to vacate one judgment and affirm the other as a matter of procedure, not constitutional law.

The circumstances forming the basis of his fourth claim to the Appellate Division do not call to mind any specific constitutional right, nor can we say that such a claim would be considered in the mainstream of constitutional litigation.  Thus, this claim was not "fairly presented" to the Appellate Division and is therefore unexhausted.

Notably, Petitioner is barred from returning to state court to present such claims under New

York procedural rules because he failed to raise these constitutional issues before the Appellate Division and has already availed himself of his direct appeal as of right to the Appellate Division and his one opportunity to seek leave to appeal to the Court of Appeals.  CPL § 450.10(1); N.Y. CT. RULES § 500.10(a); *see also Dluhy v. Mazzuca*, 2007 WL 2071742, at *6 (N.D.N.Y. July 17, 2007) (citing *Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991)).  When, as here, "it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile[,]" *Aparicio v. Artuz*, 269 F.3d at 90, a district court may deem such claim exhausted but also procedurally defaulted, *Bossett v. Walker*, 41 F.3d 825, 828-29 (2d Cir. 1994).  Therefore, this claim is deemed exhausted and procedurally defaulted.

Where a prisoner has defaulted on his federal claims in state court, a district court may reach the merits of such claims only upon a demonstration of "cause for the default and actual prejudice," or that a "failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  To establish "cause" sufficient to excuse a procedural default, a petitioner must show that some objective external factor impeded his or her ability to comply with the relevant procedural rule.  *Coleman v. Thompson*, 501 U.S. at 753, *Restrepo v. Kelly*, 178 F.3d 634, 639 (2d Cir. 1999).  Examples of external factors include "interference by officials," ineffective assistance of counsel, or that "the factual or legal basis for a claim was not reasonably available" at trial or on direct appeal.  *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Bossett v. Walker*, 41 F.3d at 829 (citing *Murray*); *United States v. Helmsley*, 985 F.2d 1202, 1206 (2d Cir. 1992).

In the case at bar, Petitioner offers no argument nor showing of cause for his failure to raise his fourth claim on direct appeal.  When, as here, a petitioner has failed to establish adequate cause

for his procedural default, the court need not determine whether he suffered prejudice, since federal *habeas* relief is generally unavailable as to procedurally defaulted claims unless both cause and prejudice are demonstrated. *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1985); *Long v. Lord*, 2006 WL 1977435, at *6 (N.D.N.Y. Mar. 21, 2006).

Finally, Petitioner has proffered no argument that failure to consider this claim would result in a fundamental miscarriage of justice, which "occurs only in those 'extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime.'" *Rodriguez v. Mitchell*, 252 F.3d 191, 203 (2d Cir. 2001) (quoting *McCleskey v. Zant*, 499 U.S. 467, 494 (1991). Indeed, there is nothing in the record before us suggesting Petitioner's innocence.

For all these reasons, it is recommended that Petitioner's fourth claim be **dismissed**.

### C. Juror Improperly Impaneled

Petitioner asserts that because one of the jurors expressed repeated doubts that he could render a fair and just verdict, his participation as a member of the jury was unconstitutional. Pet. at Ground One. During *voir dire*, prospective juror Tony Mead was not challenged by either party, although the prosecutor commented, "[h]e's the one who knows the folks in Hancock but says it wouldn't affect his ability[,]" to which Defendant's counsel responded, "[n]o challenge for cause from me." Trial Tr. at p. 77. After being sworn in, Mr. Mead sought the attention of the court, and the following colloquy ensued:

> The Court:     Mr. Mead what do you want to tell me?
> Sworn Juror:  I just don't want to cause any trouble but as close to home as this situation is, I've got two sons, and this is a criminal case I don't want any part of it.
> The Court:     You didn't mention anything.
> Sworn Juror:  I did mention I know some of the –
> The Court:     You didn't express those concerns when the attorneys were selecting.
> Sworn Juror:  They asked me if I would be fair, I would, but like I said, Hancock

| | |
|---|---|
| | and Cadosia is like the same town and I just don't like the situation. |
| The Court: | Well, whether you like it or not, is that going to render it impossible for you to render a fair and just verdict in this case? |
| Sworn Juror: | I'm going to say yes. |
| The Court: | You're telling me that because you live in the town where this defendant comes from, you can't render a fair and just verdict? |
| Sworn Juror: | It's just a feeling I have, you know, that's what I'm saying. I know the people, not all of them, but some of them, but living there, it's different if I didn't know any of them, that's what I'm trying to say, and if they didn't know me. |
| The Court: | Is your concern that you know them or they know you? |
| Sworn Juror: | Both. I mean, if there was somebody I didn't know, that would be one thing. |
| The Court: | You understand, Mr. Mead, it's part of your civic duty to perform jury service if called? |
| Sworn Juror: | Yes, I did understand that. It would be totally different if I didn't know any of them and it wasn't right in the same town. That's all I'm saying. |
| The Court: | And you're saying you cannot render a fair and just verdict in this matter? |
| Sworn Juror: | Because of the situation, I honestly don't know if I could. |

*Id*. at pp. 84-86.

The judge then excused Mr. Mead and asked the attorneys for their position on the matter. *Id*. at p.

87. Mr. David Roosa, Esq., Petitioner's attorney, stated

> Judge, my position is I want him on the jury. I heard him say he knew people and I intentionally did not follow that up. There's no law that says if he knows somebody he can't sit on a jury. He said when we asked him that he would be fair.

*Id*.

The prosecutor did not object. The Court then ordered that Mr. Mead would serve on the jury.

The Appellate Division held that by specifically requesting that Mr. Mead remain on the

jury, Petitioner waived his right to challenge that juror's qualification to serve. *People v. Hazen*,

799 N.Y.S.2d at 588. Similarly, the Second Circuit has held that when a petitioner deliberately

chooses "not to challenge [a] particular juror before the trial court, [that Petitioner] has waived the

opportunity to challenge the juror's impartiality on habeas review." *Waters v. McGinnis*, 99 Fed.

*-10-*

Appx. 318, 319 (2d Cir. 2004) (citing *United States v. Ragland*, 375 F.2d 471, 475 (2d Cir. 2004) & *United States v. Gersh*, 328 F.2d 460, 463-63 (2d Cir. 1964)); *see also United States v. Novod*, 923 F.2d 970, 978 (2d Cir. 1991) (defendant who did not object to the impaneling of a juror waived the right to challenge that juror on appeal).  Here, Petitioner's attorney argued in favor of keeping Mr. Mead on the jury, and both the trial court and the prosecutor agreed with his argument.  Thus, Petitioner did not merely fail to assert his right, he intentionally abandoned it.  In so doing, Petitioner waived any challenge for cause based on Mr. Mead's alleged impartiality.[2]

Therefore, it is recommended that this claim be **dismissed**.

### D.  Denial of Pre-trial Motions

Petitioner asserts that after his plea was vacated and the case remanded to county court, he was denied the right to make pre-trial *omnibus* motions including a motion for suppression.  Pet. at Ground Two.  Petitioner asserts that the decision denying leave to file a suppression motion resulted in a violation of his right against self-incrimination under the Fifth Amendment.  Based on our review of Petitioner's Appellate Brief, his Fifth Amendment claim appears to arise out of the admission of testimony from State Trooper Diane Hall, who repeated at trial inculpatory statements allegedly made to her by Petitioner.  *See* Pet'r Appellate Br. at p. 28.  The Appellate Division rejected this claim without discussion.  *People v. Hazen*, 799 N.Y.S.2d at 599.

After Petitioner's plea was vacated, his newly appointed trial counsel, Mr. Roosa, made a request to make pre-trial motions before the Honorable Carl F. Becker, Delaware County Court Judge.  R., Pre-trial Proceeding Tr., dated Oct. 6, 2003, at p. 3.  Judge Becker responded that because Petitioner had been previously afforded the opportunity to make *omnibus* motions prior to

---

[2] We note that Petitioner has made no claim of ineffective assistance of counsel in that respect.  *See generally* Pet.

the plea bargain, he would not consider any such motions, though he did allow for a new period of discovery.  *Id*.  During the discovery period, the prosecutor provided Mr. Roosa with information regarding inculpatory statements made by Petitioner to law enforcement officers.  Trial Tr. at p. 110. Days before trial, Mr. Roosa made a motion asking for a *Sandoval*[3] hearing and an order permitting "the renewal of all motions," but did not make any specific suppression motion.  Pet, Ex. G-1, Notice of Mot., dated Jan. 1, 2004.  The trial court scheduled a *Sandoval* hearing but denied the motion to renew all motions.  Pet., Ex. H-1, County Ct. Decision & Order, dated Jan. 5, 2004.

At trial, one of the police officers who arrested Petitioner on May 25, 2001, Diane Hall, began to testify about inculpatory statements Petitioner made to her at the police station, at which point Mr. Roosa objected on the grounds that he had not been served with a notice of such statements under CPL § 710.30.[4]  After considering the objection, Judge Becker made the following ruling:

> This defendant was originally arraigned in 2001, he was brought back to this Court following his successful appeal of the original conviction which resulted from his plea of guilty.  The appearance before the Court at which the defendant was assigned Mr. Roosa was not a new arraignment.  The arraignment occurred in 2001 and at that time according to the Court's file, the prosecution provided then defense counsel with a Section 710.30 notice.  In addition, the Court notes that it has been informed that, and Mr. Roosa acknowledges, that during the course of discovery in this matter that the District Attorney provided the defense with information regarding the statements allegedly made by the defendant to law enforcement and the Court will note there were no motions made with respect to such statements.  Accordingly, the defense motion, in the nature of a preclusion motion respecting statements made by this defendant to law enforcement is denied.

---

[3] *People v. Sandoval*, 314 N.E.2d 413 (1974).  A *Sandoval* hearing is "an evidentiary hearing held to determine whether, if the defendant testifies, his prior convictions may be admitted to impeach his credibility."  *Shannon v. Senkowski*, 2000 WL 1683448, at *6 (S.D.N.Y. Nov. 9, 2000) (citing *Sandoval*).

[4] CPL § 710.30 requires that "[w]henever the people intend to offer at a trial (a) evidence of a statement made by a defendant to a public servant, which statement if involuntarily made would render the evidence thereof suppressible upon motion . . . they must serve upon the defendant a notice of such intention, specifying the evidence intended to be offered."

*-12-*

Trial Tr. at pp. 146-47.

In sum, the trial court dismissed Petitioner's objection because his first attorney was provided the notice required under § 710.30 when Hazen entered into the plea bargain, and his second attorney, Mr. Roosa, acknowledged that he received notice of the statements during the discovery period.  *Id.*  Thus, Petitioner does not appear to have suffered a violation of § 710.30. Even if such a violation  occurred, an error of state procedural law does not implicate a constitutional violation.  *Curtis v. Lacy,* 1996 WL 1088930, at *2 (E.D.N.Y. Jan. 25, 1996) (citing *Brown v. Harris*, 666 F.2d 782, 785 n.4 (2d Cir. 1981)).  To the extent that Petitioner's Fifth Amendment claim was based on a alleged violation of § 710.30, that claim should be **dismissed**.

Petitioner also appears to assert that the trial court violated his due process rights when it denied his request to file pre-trial motions and his subsequent request to "renew all motions." However, Petitioner identifies no precedent, and the Court can find none, for the proposition that a trial court is required to permit a defendant to make a second round of pre-trial motions after his guilty plea has been vacated and the case remanded for trial.[5]  Therefore, this claim should be **dismissed** as well.

### E.  Improper Jury Instructions

Petitioner claims that the "jury instructions were unconstitutional because they did not tell the jury that [the] prosecution must prove all [the] crucial elements of guilty beyond a reasonable doubt."  Pet. at Ground Three.

In order to obtain a writ of *habeas corpus* in federal court for an error in a state court's jury instructions, a petitioner must not only show that the "instruction misstated state law but that the

---

[5] We note again that Petitioner has made no claim of ineffective assistance of counsel for failure to make pre-trial motions.

*-13-*

error violated a right guaranteed to him by federal law." *Davis v. Strack*, 270 F.3d 111, 123 (2d Cir. 2001) (citations omitted).   In that respect, *habeas* petitioners asserting such a claim face "a substantial burden."   *DelValle v. Armstrong*, 306 F.3d 1197, 1200-01 (2d Cir. 2002) (citing *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977)).   Furthermore, "a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973).   The question then, is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Id.* at 147.

In this case, Petitioner asserts that the "the court's charge on the issue of intent was unconstitutionally impermissible" because the People were "required to prove the five elements [of the assault charge] beyond a reasonable doubt," and the instructions only required the People to prove two.   Pet. at Ground Three.

A review of the trial court's jury instructions reveals that, in fact, Judge Becker did instruct the jury on multiple occasions of the prosecution's duty to prove each element of the crime beyond a reasonable doubt.   Trial Tr. at pp. 286 & 294.   Judge Becker defined the crime of assault in the second degree[6] as follows: "a person if guilty of assault in the second degree when, with intent to cause physical injury to another person, he causes such injury to that person by means of a dangerous instrument." *Id.* at p. 299.   As Petitioner points out, there are five elements to this crime: (1) intent to cause (2) physical injury (3) to another person, and (4) actually causing such injury using (5) a dangerous weapon.   Judge Becker explained and defined for the jury the often difficult to understand element of intent, as well as the elements of physical injury and dangerous instrument. *Id*.   Petitioner's claim appears to take issue with the following portion of Judge Becker's charge:

---

[6] Assault in the second degree is codified as N.Y. PENAL LAW § 120.05(2).

In order for you to find the defendant guilty of this crime, the People are required to prove from all of the evidence in the case beyond a reasonable doubt both of the following two elements: First, that on or about May 25th, 2001 in the County of Delaware, the defendant Michael S. Hazen caused physical injury to Rickey R. Hadley, Junior by means of a dangerous instrument, to wit, a knife. And two, that the defendant did so with the intent to cause physical injury to Rickey R. Hadley.

*Id*. at p. 300.

Although Judge Becker combined the five elements into two, all of the five elements were included in the section of the charge quoted above. Judge Becker did not make a misstatement of the law, and in fact, his combination of four of the elements of the crime was arguably to Petitioner's benefit, as it isolated the element of intent upon which Petitioner's theory that he was too intoxicated to possess the requisite intent depended. In that vain, we note that Judge Becker also instructed the jury on the defense of intoxication, stating that "evidence of intoxication may be considered by a jury in determining whether a defendant in fact possessed the requisite intent which is an essential element of the crime charged." *Id*. at p. 302.

In sum, we cannot conclude that the jury instructions were in error, much less that they violated any of Petitioner's constitutional rights. *See generally Henderson v. Kibbe*, 431 U.S. 145 (1977) (ruling that the trial court's failure to give specific instructions on the element of causation did not amount to a due process violation). For these reasons, it is recommended that Petitioner's claim be **dismissed**.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Petition for a Writ of *Habeas Corpus* be **DENIED**; and it is further

**RECOMMENDED**, that because the Court finds Petitioner has not made a "substantial

showing of the denial of a constitutional right" pursuant to 28 U.S.C. § 2253(c)(2), no certificate of

appealability should issue with respect to any of Petitioner's claims. *See* 28 U.S.C. § 2253(c)(2) ("A

certificate of appealability may issue . . . only if the applicant has made a substantial showing of the

denial of a constitutional right."); *see also Lucidore v. New York State Div. of Parole*, 209 F.3d 107,

112 (2d Cir. 2000); and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and

Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten (10) days within which to file written

objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE**

**APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y

of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R.

Civ. P. 72, 6(a), & 6(e).


Date:   August 1, 2008

Albany, New York

_____
RANDOLPH F. TREECE
United States Magistrate Judge